## ROSS v. JAMES. (No. 2492.)

(Court of Civil Appeals of Texas. Amarillo. June 3, 1925. Rehearing Denied June 24, 1925.)

1. Appeal and error ⚖➡1078(4)—Assignments not briefed not considered in absence of apparent fundamental error.

Assignments of error will not be considered, though counsel do not mean to waive them, where they are not presented by appropriate propositions or statements, are not dis-

cussed in brief, and present no fundamental error apparent of record.

2. Trial ⚖➡352(4)—Issue held not raised by testimony, so as to require submission of special issue.

In action by employé for salary, evidence held to raise no issue as to whether employé was to receive his salary only from proceeds of business, so as to require submission of special issue.

3. Master and servant ⚖➡80(7)—Evidence admissible, as bearing on probability that one would agree to manage losing business on contingent salary.

In action by theater manager for salary, wherein owner pleaded that, under contract, he was not to be individually liable, but that salary was to come only from proceeds of business, evidence of owner's statements as to losses in operating business prior to manager's engagement and amount of such losses was admissible as circumstance bearing on probability of truth of owner's defense.

Appeal from District Court, Clay County; Paul Donald, Judge.

Action by J. T. James against J. W. Ross. Judgment for plaintiff, and defendant appeals. Affirmed.

Wantland & Glasgow, of Henrietta, and Cox, Fulton & Dickey, of Wichita Falls, for appellant.

Chancellor & Bryan, of Bowie, for appellee.

RANDOLPH, J. J. T. James, plaintiff, brought this suit in the district court of Clay county against J. W. Ross, defendant, to recover $882.57 balance alleged to be due him on salary for running a moving picture show in Frederick, Okl. Plaintiff recovered judgment, and this appeal is taken from that judgment.

[1] Appellant, defendant below, presents only two propositions in his brief filed in this court, the first proposition relating to or germane to his assignment of error No. 4, and the second proposition to assignment No. 10. In regard to the other eight assignments, counsel for appellant say they do not mean to waive them. Whether such is their intention or not, we shall not consider such other assignments, as they are not presented by appropriate propositions or statements, are not discussed in the brief, and do not present fundamental error apparent of record.

[2] Appellant's first proposition is that where there is an issue of fact between plaintiff and defendant as to whether the salary sued for was to be paid out of the proceeds of the business, or the defendant was to be held liable regardless of whether the business paid expenses or not, and that it was error on the part of the trial court to refuse to submit a special issue as to whether or not the amount of salary found by the jury to be due was to be paid from the proceeds of the busi-

ness or independent of the business. Appellant submitted a special issue presenting the question to the jury, which the trial court refused to submit to them.

If we concede that the proposition is abstractly correct where such issue is made by the evidence, it is not applicable to this case. The plaintiff testifying on the trial of the case said:

"Mr. Ross and I had a trade with reference to my work at Frederick. Mr. Ross had another man in charge of his place in Frederick and he asked me if we sold out at Bowie if I would go up there and take charge of the show and I told him that I would for $35 a week, and— There was nothing said as to how it was to be paid. I was supposed to collect it weekly. I worked for him 59 weeks. At $35 a week that is $2,065. Of that amount $1,243.55 was paid which leaves a balance due of $821.45. * * * This $35 a week that I was to get was for my services as manager of the show. That was all the service I was to render him. I gave him all my time. I did not engage in any other business enterprise during the time that I was at Frederick outside of the operation of the picture show. I am not a man of means. During the time I was at Frederick I did not have any other source of income or revenue other than my salary."

Ross, the defendant, testified on this point:

"I had a conference with Mr. James with reference to his going to Frederick to take charge of the theater over there. I had that conference in two or three places, when we were out at lunch and about the booth from time to time. * * * The man who—May I state the young man's salary, and then state his? The other man was getting $25 per week and I thought that James was the best man for the job. He was to go there for $27.50 with the understanding that when business got better he would get more, but that was the understanding—that he was to go over there for $27.50 per week until business was better, until the show was making more money than it was then. I told James that his salary would be $27 50 per week, that was the agreement. Mr. James agreed to that and understood just how it was to be. There was not anything said about $35 per week. Not anything said about how the salary should be paid, whether it should be paid by me or out of the proceeds of the show."

It will be seen that there was an issue between the parties as to whether or not the salary was to be $35 per week or $27.50 per week. This issue was submitted to the jury, and they answered that the sum agreed on by the parties as salary for the plaintiff, James, was $35 per week. This testimony raises no issue that the plaintiff was only to receive his salary from the proceeds of the business. The trial court did not err in refusing to submit this issue to the jury.

[3] Appellant's second proposition alleges error on the part of the trial court in admitting in evidence certain conversations and transactions prior to the contract which did not lead up to nor explain the contract itself. The testimony objected to is as follows:

"Q. What was the first time that Mr. Ross talked to you about the show not making expenses? A. January, 1922, about the 17th.

"Q. That is the year you started in there? A. Yes, he told me before I started in that the show wasn't paying expenses.

"Q. Have you the books of the man who you succeeded? A. Yes.

"Q. Do those books show the amount that the show lacked of paying expenses prior to the time you took it, for any great time? (Objection: The man that kept the books would be the one to identify them, and it is irrelevant and immaterial. Sustained.)

"Q. Did Mr. Ross know what the books showed with reference to a loss of the business before you took charge? (Objection: Conclusion.)

"Q. Did Mr. Ross tell you? A. Mr. Ross told me the business was operating at a loss.

"Q. Did he tell you the approximate amount of the loss it was operating? (Objection: Immaterial. Overruled. Exception.) A. He said it was losing about $100 a week, something like that. He would not say the exact amount."

The defendant had pleaded that the plaintiff entered into a verbal contract with him to operate the moving picture show; that in the event it did not pay all operating expenses it was to be closed down and business discontinued, but that in the event the show did pay operating expenses, including a reasonable salary for the plaintiff and other operatives in said business, that all of the profits over and above the operating expenses would belong to the defendant, but that at no time would the defendant be individually liable to the plaintiff for any salary whatever.

In view of this pleading, we think that the testimony was admissible to explain the intentions and conduct of the parties leading up to the closing of the contract. It throws light upon the question as to whether a man without means to live on would take over the management of a business that was being run at a loss and to be paid only if the business succeeded—as a circumstance in refutation of defendant's claim that he was to operate the show and trust to the success of the business for his pay.

Finding no error, we affirm the judgment of the trial court.